Markman, J.
(concurring). Although defense counsel, in my judgment, committed several discovery violations, what I view as most significant about this case is the trial court’s exclusion of the testimony of three key defense witnesses. I believe that the exclusion of this testimony constituted harmful error and deprived defendant of the ability to fully and fairly defend herself at trial. In light of Justice Corrigan’s thoughtful dissent, I write separately to briefly explain why, in my view, the Court of Appeals analysis is correct.
First, I am concerned that the tried court’s exclusion of the testimony of Dr. Firoza VanHorn, defendant’s psychologist, deprived defendant of *857 her ability to present a meaningful defense as to why she had demonstrated no emotion in the wake of her daughter’s death. Throughout the trial, the prosecutor invoked defendant’s apparent lack of emotional response in the moments and days following her daughter’s death as being indicative of her guilt. Dr. VanHorn’s testimony was critical in attempting to explain that defendant’s unusual emotional responses were not indicative of guilt, but rather were characteristic of defendant’s general inability to properly ejqpress emotions when faced with difficult life situations. The prosecutor argued that Dr. VanHorn’s testimony was being offered as proof of “diminished capacity,” which this Court has held is no longer a viable defense. See People v Carpenter, 464 Mich 223, 226 (2001). However, this argument misunderstands the true purpose for which the testimony was offered, which was to explain that defendant does not display emotions in a normal manner. The prosecutor repeatedly referenced defendant’s lack of emotional reactions in front of the jury, most notably diming closing arguments. By depriving defendant of the principal means available to her to explain her inability to respond in a normal fashion to her daughter’s death, defendant was seriously undermined in her ability to respond to the prosecutor and to present a meaningful defense.
Justice CORRIGAN argues in her dissent that the trial court properly limited the testimony of Dr. VanHorn, because it “could have properly excluded Dr. VanHorn from testifying at all” in light of the fact that defense counsel “sprung Dr. VanHorn [on the prosecutor] during trial on March 23, 2006, after the prosecution had already rested its case.” However, because the prosecutor had actual notice of Dr. VanHorn, I respectfully disagree. On February 21, 2006, the trial court posed the following question to the prosecutor in regard to defendant’s motion to add Dr. VanHorn: “So you’re not objecting to ... Dr. Firoza Vanhorn?” The prosecutor responded, “correct.” Further, the prosecutor admitted that “as far as ... VanHorn, Mr. Czuprynski [defense counsel] did provide an amended witness list, that’s dated March 2nd of 2005; we received notice of that.” In other words, the prosecutor admittedly had more than a year of actual notice that defense counsel intended to call Dr. VanHorn as a witness, and waived any objection to this.[1] Thus, I do not *858 believe that defendant’s failure to formally request that Dr. VanHorn be added as a witness, which was required by court order, was indicative of bad faith.
Second, I also believe that the trial court erred by excluding significant portions of Roxanne Davis’s testimony. Just as with Dr. VanHorn, Davis’s excluded testimony was not offered to show defendant’s intellectual limitations, but was offered, and should have been admitted, to show that defendant’s emotional reactions to traumatic events were abnormal, including, implicitly, her reaction to her daughter’s death. Although, as Justice Corrigan points out, defense counsel was allowed to reference defendant’s limited intellectual abilities on several occasions, this is distinct from being allowed to present evidence of defendant’s ability to display normal emotions. An individual with limited intellectual functions may have completely normal emotional reactions, while an individual with above-average intelligence may not have the ability to normally express emotions. Because Davis was prevented from testifying about defendant’s inability to express emotions in a normal fashion, the trial court erred. Once again, because the prosecutor used this evidence extensively as an indicator of defendant’s guilt, the defendant was undermined in her ability to respond to the prosecutor and to present a meaningful defense.
Third, I believe that the trial court erred by preventing Dr. Bernie Eisenga, a toxicologist, from testifying. Dr. Eisenga was the only expert who could have informed the jury that Monique had ingested as few as 30 pills of Imipramine as compared to the prosecutor’s theory that she had taken as many as 120. Although I share Justice Corrigan’s concern that defense counsel violated the trial court’s order by failing to identify Dr. Eisenga at least 30 days before trial, I nevertheless believe that the trial court erred by preventing Dr. Eisenga from testifying. In determining whether a defendant’s expert should be precluded from testifying, this Court has held that the sanction of preclusion is extreme and should be limited to only the most egregious cases. People v Merritt, 396 Mich 67, 82 (1976). In determining whether exclusion is proper, the trial court should examine whether the other party will be severely prejudiced by the untimely disclosure. People v Burwick, 450 Mich 281, 296 (1995).
In context, this discovery violation does not appear to be a most egregious case, given that defendant’s original pathologist retired, thereby requiring that defense counsel obtain a new pathologist, Dr. Steven Cohle. Dr. Cohle then opined that defendant’s daughter may have ingested significantly fewer pills of Imipramine than both the prosecutor’s experts and defendant’s prior pathologist had estimated. Indeed, Dr. Cohle stated that defendant’s daughter could have taken as few as 30 pills, which may not have been fatal and would provide additional support that her death was not the result of a homicide, but was instead *859 due to a heart defect. In light of this conclusion, Dr. Cohle recommended that defendant obtain an expert toxicologist to testify about the number of pills in her daughter’s system, which triggered defendant’s request to add Dr. Eisenga relatively shortly before trial. Under these circumstances, I do not believe that defendant was attempting to ambush the prosecutor. Rather, it was not until the eve of trial that defense counsel realized that a toxicologist was needed to rebut the opinion of the prosecutor’s experts that defendant’s daughter had ingested up to 120 pills. Further, the prosecutor had already secured a toxicologist who could have been used to refute Dr. Eisenga’s testimony. Thus, it is unclear how the prosecutor would have been prejudiced, much less “severely” so, by the introduction of Dr. Eisenga’s testimony.
Further, other testimony indicating that defendant’s daughter had probably taken fewer pills than the prosecutor’s experts suggested does not render the trial court’s exclusion of Dr. Eisenga’s testimony harmless. Without expert testimony about the exact number of pills taken by the daughter, the jury had no way of determining the extent or magnitude by which the prosecutor’s experts overestimated the amount of Imi-pramine in her system at the time of her death. A difference of as many as 90 pills constitutes a substantial overestimation, which may well have caused the jury to conclude that there was a reasonable doubt concerning whether this was actually a homicide. This error, too, was not harmless.
In sum, the trial court’s exclusion of the testimony described above effectively prevented defendant from mounting any defense to the two most damaging pieces of evidence used by the prosecutor: defendant’s apparent lack of concern after her daughter’s death and the existence of 120 pills of Imipramine in her daughter’s system. The effective operation of our criminal justice system depends on the discovery of the truth, and evidence is the lifeblood of this pursuit. I believe that the trial court erred in depriving the fact-finder of available evidence and, as a result, deprived defendant of a fair trial, and deprived the people of a criminal justice system in which the discovery of the truth was facilitated.
For these reasons, I agree with the Court of Appeals that defendant is entitled to a new trial.

 Justice CORRIGAN also argues that defense counsel “failed to provide the prosecutor with any information whatsoever concerning expert reports prepared by [Dr. VanHorn] ... [and] the prosecutor specifically objected to Dr. VanHorn’s testimony on March 23, 2006, because defense counsel only informed the prosecutor that Dr. VanHorn would testify about defendant’s diminished capacity, a defense explicitly precluded by an earlier ruling.” Post at 862 n 3. I respectfully disagree with this assessment of the record. Significantly, it was the prosecutor who characterized Dr. VanHorn’s testimony as pertaining to diminished capacity, not defense counsel. Additionally, the fact that the prosecutor was, in fact, able to object as it did to Dr. VanHorn’s proposed testimony suggests, although the record is by no means dispositive, that defense counsel did provide the prosecutor with “a written description of the substance of the *858 proposed testimony of the expert, the expert’s opinion,” and perhaps “the underlying basis of that opinion,” which is an acceptable alternative, under MCR 6.201(A)(3), to “a report by the expert.” Once again, I do not view a relatively minor evidentiary violation (i.e., failing to produce an actual report), as justifying the extreme remedy of exclusion.